# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------

SHIVA STEIN,                                                           :
                                                                       :
          Plaintiff,                                   :   Civil Action No. _____
                                                                       :
v.                                                                     :   **COMPLAINT FOR VIOLATIONS OF**
                                                                       :   **SECTIONS 14(a) AND 20(a) OF THE**
GANNETT CO., INC., JOHN JEFFRY                                         :   **SECURITIES EXCHANGE ACT OF**
LOUIS, PAUL BASCOBERT, JOHN E.                                         :   **1934**
CODY, STEPHEN W. COLL, DONALD                                          :
FELSINGER, LILA IBRAHIM, LAWRENCE                                      :   **JURY TRIAL DEMANDED**
S. KRAMER, DEBRA A. SANDLER, and                                       :
CHLOE R. SLADDEN,                                                      :
                                                                       :
          Defendants.                                  :

---------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Gannett Co., Inc. ("Gannett or the "Company") and the members Gannett's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Gannett and affiliates of New Media Investment Group Inc. ("New Media").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on August 29, 2019 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Arctic Acquisition Corp. ("Merger Sub"), a wholly owned subsidiary of Artic Holdings LLC, itself a wholly owned subsidiary of New Media ("Intermediate Holdco"), will merge with and into Gannett, with Gannett continuing as the surviving corporation and an indirect wholly-owned subsidiary of New Media (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each share of Gannett common stock issued and outstanding will be converted into (1) 0.5427 (the " exchange ratio") of a fully paid and nonassessable share of common stock, par value $0.01 per share, of New Media ("New Media common stock"), and (2) the right to receive $6.25 in cash, without interest (the "cash consideration"), plus cash in lieu of any fractional shares of New Media common stock that otherwise would have been issued (the "Merger Consideration"). New Media and Gannett shareholders will own approximately 50.5% and 49.5% of the combined company's outstanding shares, respectively.

3.      As discussed below, Defendants have asked Gannett's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction. The financial projections were also utilized by the financial advisors of New Media, Credit Suisse Securities (USA) LLC ("Credit Suisse") and Jefferies LLC, and the

financial advisor of the Company, Greenhill & Co., LLC ("Greenhill"), in conducting the valuation analyses in support of their fairness opinions. The Registration Statement also omits material information with respect to the analyses performed to reach the fairness opinions from each financial advisor.

4.     It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Gannett's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Gannett is incorporated in this District.

**PARTIES**

9.      Plaintiff is, and has been at all relevant times, the owner of Gannett common stock and has held such stock since prior to the wrongs complained of herein.

10.      Individual Defendant John Jeffry Louis has served as the Chairman of the Board since June 2015.

11.      Individual Defendant Paul Bascobert has served as the Company's President, Chief Executive Officer, and a member of the Board since August 2019.

12.      Individual Defendant John E. Cody has served as a member of the Board since June 2015.

13.      Individual Defendant Stephen W. Coll has served as a member of the Board since July 2015.

14.      Individual Defendant Donald Felsinger has served as a member of the Board since September 2015.

15.      Individual Defendant Lila Ibrahim has served as a member of the Board since June 2015.

16.      Individual Defendant Lawrence S. Kramer has served as a member of the Board since June 2015.

17.      Individual Defendant Debra A. Sandler has served as a member of the Board since June 2015.

18.      Individual Defendant Chloe R. Sladden has served as a member of the Board since June 2015.

19.      Defendant Gannett is incorporated in Delaware and maintains its principal offices in McLean, Virginia.  The Company's common stock trades on the New York Stock Exchange under the symbol "GCI."

20.    The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.    The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.    The Proposed Transaction

22.    Gannett operates as a media and marketing solutions company. The Company operates through Publishing and ReachLocal segments. It offers print and digital daily and non-daily publications under the USA TODAY NETWORK brand name in the United States; and Newsquest, which has print and online publications portfolio of approximately 150 news brands and 150 magazines in the United Kingdom. The Company's operations include 110 daily the United States print products, including USA TODAY; and 150 publications in the United Kingdom. It also provides commercial printing and distribution, marketing, and data services; and owns s1 and Exchange & Mart businesses, and a specialist magazine business. In addition, the Company offers digital marketing solutions comprising search engine marketing, social advertising, and display advertising; software solutions, such as lead conversion and field management software, as well as presence solutions, including websites, search engine optimization, listings management, and live chat; and WordStream, cloud-based software-as-a-service solution for local and regional businesses and agencies. The Company offers its suite of products and solutions to local businesses through its proprietary technology platform, sales force, and third-party agencies and resellers. It also operates in Canada, Australia, New Zealand, Japan, and Brazil. The Company was formerly known as Gannett SpinCo, Inc. and changed its name to Gannett Co., Inc. in May 2015. Gannett was incorporated in 2014 and is headquartered in McLean, Virginia.

23.     On August 5, 2019, the Company and New Media jointly announced the Proposed Transaction:

> NEW YORK & MCLEAN, Va.--(BUSINESS WIRE)--New Media Investment Group Inc. ("New Media") (NYSE: NEWM) and Gannett Co., Inc. ("Gannett") (NYSE: GCI) announced today that New Media and Gannett have entered into a definitive agreement (the "Merger Agreement") pursuant to which New Media will acquire Gannett for a combination of cash and stock (the "Merger").
>
> Under the terms of the Merger Agreement, shareholders of Gannett will receive $6.25 in cash and 0.5427 of a New Media share for each Gannett share they hold, representing total consideration of $12.06 per Gannett common share based on New Media's closing stock price as of August 2, 2019, and a premium of approximately 18% to the five-day volume-weighted average price of Gannett shares as of that date. After the close of the transaction, Gannett shareholders will hold approximately 49.5% of the combined company and New Media shareholders will hold approximately 50.5%.
>
> The Merger brings together the portfolios of two leading local newspaper companies, and includes USA TODAY, Gannett's flagship brand, and its more than 160 brands in the U.K., which will significantly expand the existing USA TODAY NETWORK. This combination will create a broad network of talented, experienced journalists poised to deliver unique and award-winning content for local communities and national audiences. The breadth and depth of each company's digital offerings will make the combined company a leading digital media player. Additionally, the joining of New Media's UpCurve and GateHouse Live businesses with Gannett's ReachLocal and WordStream subsidiaries will provide multiple, diversified marketing and revenue solutions and position the combined company as a stronger partner for advertisers and small businesses ("SMBs") in the markets served.
>
> With strategically-aligned leadership and significant scale of operations, the Merger will accelerate the combined company's digital transformation. The Merger also affords an opportunity to realize run-rate cost synergies of $275 - $300 million annually across the combined company in a judicious manner, while continuing to invest in newsrooms.

* * *

**Leadership and Governance**

The combined company's management team will be led by New Media's current Chairman and Chief Executive Officer, Michael Reed. Alison Engel, Gannett's current Chief Financial Officer, is expected to serve as the Chief Financial Officer of the combined organization upon closing. Gannett's newly appointed Chief Executive Officer, Paul Bascobert, will become Chief Executive Officer of the combined company's operating subsidiary. The rest of the combined company's senior executive team, which is expected to be composed of highly experienced leaders from both companies, will be announced at a later date.

Mr. Bascobert was the President of XO Group from 2016 until its sale to Permira Equity in 2019. During his tenure, he helped lead the company's transformation from a media company to a marketplace business. Prior to XO, Mr. Bascobert led sales, service, and marketing for the Local Businesses segment at Yodle from 2014 until 2016. Before that, he spent four years at Bloomberg LP as President of Bloomberg Businessweek from 2010 until 2014, in addition to serving as Chief Operating Officer of the Media Group from 2011 to 2014. Mr. Bascobert joined Bloomberg from Dow Jones & Co. where he was Senior Vice President of Operations from 2006 until 2007 and Chief Marketing Officer from 2007 until 2009.

The combined company's Board of Directors will have nine members, including Mr. Reed as Chairman, five independent directors from New Media, and three independent directors from Gannett. Mr. Kevin Sheehan, who currently serves as New Media's Lead Director, will serve as the combined company's Lead Director. New Media has been actively engaged in a director search and expects to announce two additional independent directors prior to closing. The companies believe that diversity can strengthen board performance and New Media is actively searching for women and other candidates with diverse backgrounds and experiences.

After the closing of the Merger, both New Media and its operating subsidiary GateHouse, will be rebranded and operate under the "Gannett" brand. The combined company will be headquartered in McLean, Va., with a continued corporate presence in existing locations.

**Financing**

New Media expects to fund the cash portion of the Merger consideration through a combination of cash on the balance sheet and a new term loan facility (the "Term Loan") to be funded at closing pursuant to a binding commitment from funds managed by

affiliates of Apollo Global Management, LLC (NYSE:APO), a global alternative investment manager with approximately $312 billion in assets under management, as of June 30, 2019, and deep experience in supporting media companies. The Term Loan, which will be used to retire existing financial debt obligations of both companies and to fund the cash component of merger consideration, will be a five-year senior secured term loan facility in an aggregate principal amount of $1.792 billion. The Term Loan will be freely pre-payable without penalty, and the combined company is expected to have a strong cash-flow profile that will permit aggressive deleveraging. Total pro forma leverage at closing of the Merger is expected to be approximately 3.5x LTM As Adjusted EBITDA, before run-rate synergies, and 2.3x including run-rate synergies. Target net leverage within two years of closing is expected to be below 1.75x.

**Dividend**

Initially, the combined company is expected to have an annual dividend of $0.76 per share. It is expected that the dividend will be increased over time as synergies are realized and leverage is reduced.

**External Management Agreement**

Concurrent with the entry into the Merger Agreement, New Media and the Manager have agreed to amend the Management and Advisory Agreement dated as of March 6, 2015 (such amendment, the "Amended Management Agreement"), pursuant to which the Manager provides a management team (including the Chief Executive Officer) and other professionals who provide services to New Media.

\* \* \*

In exchange, New Media will issue to the Manager upon closing approximately 4.2 million shares of New Media common stock. The Manager is restricted from selling these shares until the expiration of the Amended Management Agreement, or otherwise upon a change in control and certain other extraordinary events. New Media will also grant the Manager approximately 3.2 million options with an exercise price of $15.50, a 45% premium to the closing price of New Media common stock on August 2, 2019. These options become exercisable upon the first trading day immediately following the first 20 consecutive trading day period in which the closing price of New Media's common stock (on its principal U.S. national securities exchange) is at or above $20 per share, and also upon a change in control and certain other extraordinary events.

Upon expiration of the term of the Amended Management Agreement, the Manager will cease providing external management services to New Media, and the Manager will no longer be the employer of the person serving in the role of Chief Executive Officer of the combined company (the "Internalization").

**Timing and Approvals**

New Media formed the Transaction Committee to review, evaluate, and negotiate the Merger and the Internalization (including the terms of the Amended Management Agreement). The Merger has been unanimously approved by the New Media Transaction Committee and by the Boards of both companies. The New Media Transaction Committee separately, and unanimously, approved the Amended Management Agreement.

The Merger is expected to close by the end of 2019, subject to the satisfaction of customary closing conditions, including receipt of regulatory clearances and approval by the shareholders of each company.

**Advisors**

Credit Suisse is serving as financial advisor to New Media, and Cravath, Swaine & Moore LLP is serving as principal legal counsel. New Media's Transaction Committee retained Jefferies LLC as its independent financial advisor, and Wilson Sonsini Goodrich & Rosati as its legal counsel.

Greenhill & Co., LLC and Goldman Sachs & Co. LLC are serving as financial advisors to Gannett, and Skadden, Arps, Slate, Meagher & Flom LLP and Nixon Peabody LLP are serving as legal counsel.

\* \* \*

24.     The Board has unanimously approved the Proposed Transaction.  It is therefore imperative that Gannett's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Registration Statement**

25.     On August 29, 2019, Gannett and New Media jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement

was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

26.     With respect to the financial projections disclosed in the Registration Statement, the Registration Statement fails to provide material information.

27.     For the *New Media Standalone Forecasts* and *New Media-Adjusted Gannett Standalone Forecasts*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Adjusted EBITDA and (2) Unlevered Free Cash Flow (Case 1 and Case 2, with or without synergies), but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 81. Information about New Media's prospective financial information is material since Gannett stockholders will own 49.5% of the combined company.

28.     For the *Gannett Standalone Forecasts* and *Gannett-Adjusted New Media Forecasts*, the Registration Statement provides values for non-GAAP financial metrics such as (1) Adjusted EBITDA and (2) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most

comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 83-85.

29.     For the *Gannett Pro Forma Combined Company Forecasts*, the Registration Statement provides values for non-GAAP financial metrics such as (1) Adjusted EBITDA and (2) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 86-87.

30.     When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, 'free cash flow' should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

32.    Thus, to cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such forecasts are necessary to make the non-GAAP forecasts included in the Registration Statement not misleading.

33.    With respect to the Credit Suisse's *Gannett Selected Companies Analysis*, the Registration Statement fails to disclose: (i) Credit Suisse's objective selection criteria in choosing the selected companies to analyze; and (ii) the observed multiples and financial metrics for each selected company. Registration Statement at 90.

34.    With respect to Credit Suisse's *Gannett Discounted Cash Flow Analysis*, the Registration Statement fails to disclose (i) the inputs and assumptions underlying the use of the multiple range of 5.0x to 6.5x; and (ii) the inputs and assumptions underlying the discount rates ranging from 7.0% to 9.0%. Registration Statement at 90-91.

35.    With respect to the Credit Suisse's *New Media Selected Companies Analysis*, the Registration Statement fails to disclose: (i) Credit Suisse's objective selection criteria in choosing the selected companies to analyze; and (ii) the observed multiples and financial metrics for each selected company. Registration Statement at 92.

36.    With respect to Credit Suisse's *New Media Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the use of the

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

multiple range of 5.0x to 7.0x; and (ii) the inputs and assumptions underlying the discount rates ranging from 7.0% to 9.0%. Registration Statement at 93.

37.     With respect to Jefferies' *Selected Public Companies Analysis* for Gannett, the Registration Statement fails to disclose: (i) Jefferies' objective selection criteria in choosing the selected companies to analyze; and (ii) the observed multiples and financial metrics for each selected company. Registration Statement at 97.

38.     With respect to Jefferies' *Selected Precedent Transaction Analysis* for Gannett, the Registration Statement fails to disclose: (i) Jefferies' objective selection criteria in choosing the selected transactions to analyze; and (ii) the observed transaction-by-transaction enterprise values, pricing multiples, and financial metrics for each selected transaction. Registration Statement at 98.

39.     With respect to Jefferies' *Discounted Cash Flow Analysis* for Gannett, the Registration Statement fails to disclose (i) the inputs and assumptions underlying the use of the multiple range of 4.5x to 5.5x; and (ii) the inputs and assumptions underlying the discount rates ranging from 7.3% to 9.3%. Registration Statement at 98.

40.     With respect to Jefferies' *Selected Public Companies Analysis* for New Media, the Registration Statement fails to disclose: (i) Jefferies' objective selection criteria in choosing the selected companies to analyze; and (ii) the observed multiples and financial metrics for each selected company. Registration Statement at 99.

41.     With respect to Jefferies' *Discounted Cash Flow Analysis* for New Media, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the use of the multiple range of 5.0x to 6.0x; and (ii) the inputs and assumptions underlying the discount rates ranging from 6.4% to 8.4%. Registration Statement at 99.

42.     With respect to Greenhill's *Illustrative Discounted Cash Flow Analysis* for Gannett on a standalone basis, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the use of the multiple range of 4.5x to 6.5x; and (ii) the inputs and assumptions underlying the discount rates ranging from 8.0% to 9.0%. Registration Statement at 103.

43.     With respect to Greenhill's *Selected Comparable Companies Analysis*, the Registration Statement fails to disclose: (i) Greenhill's objective selection criteria in choosing the selected companies to analyze; and (ii) the observed multiples and financial metrics for each selected company. Registration Statement at 108-09.

44.     With respect to Greenhill's *Illustrative Discounted Cash Flow Analysis with Synergies Sensitivity Analysis* for Gannett on a pro forma basis, the Registration Statement fails to disclose the inputs and assumptions underlying the use of 5.5x EBITDA multiple. Registration Statement at 109.

45.     With respect to Greenhill's *Illustrative Value Creation Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 7.0% to 8.0%; and (ii) the range of illustrative terminal values for Gannett as of December 31, 2023. Registration Statement at 116.

46.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

49.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

50.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).   The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

51.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.   The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.   Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.   Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

52.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.   Plaintiff has no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Gannett within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as directors of Gannett, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Gannett, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Gannett, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

57.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 11, 2019

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*